## BENBOW *et al.* v. SOOTHSMITH & Co

**Statute of Frauds:** PROMISE TO PAY FOR GOODS DELIVERED TO ANOTHER. If any credit at all is given to the party to whom goods are delivered, the parol promise of another party to pay for them must be in writing in order to be of any validity. But in this case, where the party obtaining the goods from plaintiffs gave them a writing authorizing defendants to pay for the goods out of moneys which would be due from defendants to him on a contract in the execution of which the goods were to be used, to which arrangement defendants orally agreed, *held,* in view of the evidence (for which see opinion), that no credit at all was extended to the person obtaining the goods, though they were charged to him in the books of plaintiffs, and though the writing given by him to plaintiffs began with the words "For the consideration of obtaining credit ;" and that defendants' agreement to pay for them was not within the statute of frauds, and was binding on them.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

FILED, DECEMBER 18, 1888.

ACTION at law to recover upon an account for merchandise. There was a trial to the court without a jury, and judgment was rendered for the plaintiffs for the amount claimed. Defendants appeal.

*Anderson & Davis*, for appellants.

*Newman & Blake*, for appellees.

ROTHROCK, J.—In 1887 the defendants, as contractors, built the substructure of a railroad bridge across the Mississippi river, at the city of Fort Madison, for the Atchison, Topeka & Santa Fe Railroad Company. On the twenty-first day of March, 1887, they entered into a written contract with one T. A. Clark, by which Clark bound himself to quarry and deliver to the defendants a large quantity of stone, to be used in constructing said bridge. The evidence shows quite satisfactorily that Clark was without means or credit, and that his only resource for carrying on the work was the anticipated payments to be thereafter made therefor by the defendants. He required supplies for his employes, and the place where the stone was to be quarried was so situated that it was necessary that he should be provided with tents, bedding, and a complete outfit for camping near the work. The plaintiffs were merchants at Fort Madison, engaged in selling groceries, provisions, etc. There is evidence in the case tending to show that one Willard, who was managing superintendent of the defendants, introduced Clark to the plaintiffs, and stated to them that it would be necessary for Clark to have supplies to carry on and perform his contract, and that plaintiffs declined to furnish supplies on credit, unless the defendants would assume payment therefor; that plaintiffs and Clark had a conference upon the subject with Willard, at which it was agreed that the defendants would be responsible for the payment of such outfit and supplies as plaintiffs might furnish to Clark; and Willard suggested that the plaintiffs and Clark should enter into a written contract, by which the plaintiffs should retain the title to the camping outfit which they were to furnish to Clark. In accord with this suggestion, the plaintiffs and Clark entered into a written agreement, in these words:

"FORT MADISON, IOWA, March 24, 1887.

"For the consideration of obtaining credit for the necessary supplies of provisions and groceries, camp outfit, consisting of four tents, cooking utensils, consisting of stove and outfit, etc., necessary to carry on my contract with Sooysmith & Co., of quarrying rock opposite this city, I hereby authorize and empower the said Sooysmith & Co. to retain and pay over to the said firm of Benbow & Benbow all money which shall become due for boarding men on the works for which camp outfit is furnished, and to deduct same from the wages of my employes, and pay over to the above firm ; and further order the said Sooysmith & Co. to retain over a per cent. of the gross earnings of my contract necessary to pay all their bills in full to the date of May 20, 1887 ; and it is further understood and agreed that the aforesaid firm of Benbow & Benbow are to retain full ownership and title of the entire outfit furnished, of tents and all camp utensils furnished, until their bills shall be paid in full ; and it is agreed, before a final settlement is made, at the close of the contract between the aforesaid firm of Sooysmith & Co. and I, Terrence A. Clark, that they shall pay in full all the bills of Benbow & Benbow against me.

"T. A. CLARK, Contractor."

The evidence further tended to show that this contract was taken by plaintiffs and Clark to Willard, who examined the same, and stated that it was all right, and directed that it be taken and deposited in defendants' office, in Fort Madison, which was done. The supplies and camping outfit were furnished by plaintiffs in pursuance of this arrangement, and monthly statements of account were furnished, and Clark drew orders on defendants in payment. All of these orders were paid by defendants but the last two. Before the orders in dispute were drawn and presented, Clark had become insolvent, being largely in debt to the defendants. The defendants commenced an action against him in the state of Illinois, where the quarry and camp were situated, and obtained judgment against him, and seized

the camping outfit (which was much deteriorated in value by use) and sold it on execution, and applied it on their judgment. The defense relied upon by the defendants was that the plaintiffs' action could not be maintained, because the contract upon which they sought recovery was within the statute of frauds, as being a parol promise to answer for the debt of another. We have stated certain facts which there was evidence tending to prove. These facts were found by the court to have been established, and as this is a law action, it is sufficient to say that the judgment of the court, so far as it is dependent on said facts, cannot be disturbed.

The contention of counsel for defendants is that under the facts in the case the contract is clearly within the statute, because the sole credit was not given to the defendants. In other words, it is claimed that the written contract between plaintiffs and Clark plainly shows that credit was extended to Clark. It is undoubtedly a correct proposition of law that, in case of the sale of property, if any credit at all be given to the party to whom the goods are delivered, the parol promise of the party sought to be charged is collateral, and must be in writing. Such is the uniform rule. See Browne, St. Frauds, sec. 197, and cases there cited. Counsel for appellants have cited these and other cases, and made copious extracts from them. We need not further allude to them. The principle is so well established as to require no more than its mere statement. But it is contended in behalf of the plaintiffs that no credit was extended to Clark, and we think that the court was warranted in finding, from the facts and circumstances proper to be taken into consideration in determining the question, that the claim of the plaintiffs must be sustained. It is true that in the written contract, signed by Clark, which is set out above, it is stated that it is "for the consideration of obtaining credit for the necessary supplies," etc. Now, if it had stated that it was for the purpose of obtaining credit of Benbow & Benbow, it would have shown unmistakably that credit was given by the plaintiffs to Clark. But it does not so

state, and all the facts and circumstances surrounding the parties show that the plaintiffs did not at any time intend to credit Clark, but that they regarded the defendants as solely liable to them. Stress is also laid upon the words at the close of the contract, where the bills of goods t⌐ be furnished are designated as bills of the plaintiffs against Clark. This expression is also entirely consistent with a valid contract with the defendants. The words do not necessarily import that credit was extended to Clark. It is to be remembered that in a certain sense the bills were against Clark ; that is, they were made out and presented to Clark, and he drew orders upon the defendants for their payment. The goods, as they were delivered to Clark, were entered upon the books of plaintiffs as charges against him. This is usually regarded as a strong circumstance showing an intention to credit the party to whom the charges are made. But this is fully explained by evidence to the effect that, as the plaintiffs had a running account against the defendants for other matters, these charges were made in the name of Clark, for convenience in making out the claim for goods furnished to him under the contract with defendants. All of the evidence in the case tends to but one conclusion, which is that Clark had no financial standing and no credit, and that, in order to carry on the work, it was necessary that the defendants should extend their credit for the necessary supplies. Clark's want of responsibility was well known to all the parties, and we think the evidence fully sustains the finding of the court that credit was extended by the plaintiffs to the defendants alone. This is the question in the case which determines the rights of the parties, and we need discuss no other.

AFFIRMED